<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HEWLETT-PACKARD FINANCIAL SERVICES COMPANY,<br><br>                Plaintiff,<br><br>v.<br><br>ONE2ONE, LLC, d.b.a. OAKBROOK PRINTING, and WILLIAM H. MUSCARELLA,<br><br>                Defendants. | Civ. No. 05-4045 (WGB)<br><br>**<u>MEMORANDUM<br>OPINION</u>** |

<u>**APPEARANCES**</u>:
ARTHUR RUSSELL
661 Franklin Avenue
Nutley, New Jersey 07110

    Counsel for Plaintiff


**Bassler, Senior District Judge:**

    This matter comes before the Court on the unopposed motion of Plaintiff Hewlett-Packard Financial Services ("HPFS") for summary judgment on its first and second claims against Defendants One2One, LLC, d.b.a. Oakbrook Printers, Inc. ("Oakbrook") and William H. Muscarella.  Plaintiff also seeks to sever its third claim.  In accordance with Rule 78 of the Federal Rules of Civil Procedure,

1

the Court decides this motion without oral argument.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiff is a Delaware corporation with its principal place of business in New Jersey, and Defendants Oakbrook and Mr. Muscarella are a Georgia limited liability company and a Georgia resident, respectively. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

Venue is proper in this District under 28 U.S.C. § 1391(a)(2), as a substantial part of the events or omissions giving rise to the claim, specifically, the performance and execution of the lease agreement, the alleged breach of which is at issue in this matter, occurred in New Jersey, and is governed by New Jersey law.[1]

---

[1] The lease agreement provides, "THIS LEASE SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF NEW JERSEY AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF." Steffey Cert. Exh. 1 at 1.
   While Defendants have filed no answer to Plaintiff's Complaint and have raised no objection to the jurisdiction of this Court, the Court notes that its assertion of jurisdiction over both Mr. Muscarella and Oakbrook is proper.
   "A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." Provident Nat'l Bank v. California Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987). The New Jersey long-arm statute extends the assertion of personal jurisdiction to the limits of the Due Process clause of the Fourteenth Amendment. N.J. Court Rules, 1969 R. 4:4-4 (2005); see also Charles Gendler & Co., Inc. v. Telecom Equip. Corp., 508 A.2d 1127, 1131 (N.J. 1986) ("this state's equivalent of a 'long-arm statute' permits service of process on non-resident defendants 'consistent with due process of law.'" (citations omitted)). Plaintiff's out-of-state service of process upon Defendants was consistent with the requirements set forth in Rule 4:4-4(b)(1)(A). Pl. Mem. at 4; see also Cert. of Service.
   Furthermore, the U.S. Supreme Court has recognized that

Steffey Cert. Exh. 1 at 1.

For the reasons set forth below, Plaintiff's motion is granted, and judgment will be entered against Defendants as to the first and second claims for relief. Plaintiff's motion as to its third claim for relief is denied.

**I. Background**

HPFS, a Delaware Corporation, is a financial services company that provides financing and leasing solutions for businesses wishing to acquire equipment. Pl. Statement Pursuant to Local Civil Rule 56.1 (hereinafter Pl. Facts) ¶ 2. Defendant Oakbrook, a Georgia limited liability company, is a provider of printing services, and Defendant Mr. Muscarella is Oakbrook's President. Id. ¶¶ 3, 9.

HP Indigo, or Indigo America, Inc. ("Indigo"), is a seller of

---

litigants may give "express or implied consent to the personal jurisdiction of the court." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.14 (1985) (quoting Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 465 U.S. 694, 703 (1984)). In the context of a commercial relationship, such consent may arise out of a contractual provision by which the parties select a forum whose laws will govern the agreement. Id. "Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process." Id. (Internal quotes and citations omitted.). Defendant has not offered, and the Court has not found, any reason that the forum selection clause in the HPFS-Oakbrook Lease should not be upheld.

printing press machinery, and is not a party to this lawsuit. Id. ¶¶ 4, 8.

In June of 2004, Oakbrook selected a printing press, the "HP Indigo Press 3050 Four-Color," which it wished to purchase from Indigo. Instead of purchasing the press directly from the seller, Oakbrook structured the transaction as a finance lease with an external company, HPFS. Id. ¶¶ 4, 5. Pursuant to this transactional structure, after Oakbrook selected the equipment it wished to purchase from Indigo, Indigo sold the equipment to HPFS, which made the purchase with the intent of leasing it to Oakbrook. Once Oakbrook had accepted delivery of the printing equipment pursuant to the terms of the lease agreement, HPFS paid Indigo the purchase price. Id. ¶ 11. Mr. Muscarella guaranteed Oakbrook's compliance with the terms and payment of the sums due under the lease agreement. Id.

The term of the lease was to be five years, and Oakbrook was expected to make sixty monthly payments of $6,925.35, for a total amount due of $364,500, exclusive of freight. Pl. Mem. at 2; see also Steffey Cert. Exh. 1 at 2.

On July 22, 2004, Oakbrook accepted delivery of the equipment and irrevocably accepted the terms of the lease agreement by signing the "Delivery and Acceptance Certificate" ("DAC"). Steffey Cert. Exh. 2. The DAC stipulates that the signing party agrees to faithfully perform all obligations under the lease, and reaffirms

4

all representations and warranties set forth in the lease agreement. Id.

Plaintiff contends, and Defendants do not deny, that Oakbrook failed to make even the first rent payment due on the lease agreement. Pl. Facts ¶ 22. Such failure amounted to a default under the terms of the lease, as well as a violation of Defendant's obligation under the DAC. Id. ¶¶ 24-25. As a result of Oakbrook's default, HPFS repossessed the equipment in August 2005 and accelerated the future rent payments due, as was its right under the terms of the lease.[2] Id. ¶¶ 26-27.

Plaintiff brought this action against Oakbrook to recover damages for breach of the lease agreement (the first claim),

---

[2]The lease provides:
If you do not pay or perform any obligation under this Lease within 10 days of when such payment or performance is due, or you or any guarantor die, become insolvent or unable to pay debts when due; stop doing business as a going concern; merge, consolidate, or transfer all or substantially all of your assets; make an assignment for the benefit of creditors, appoint a trustee or receiver or undergo a substantial deterioration of financial health, we can do any or all of the following: (1) accelerate without notice all payments provided for in this Lease, (2) immediately repossess the Equipment, (3) collect all costs of collection, including reasonable attorneys' fees, (4) collect lost tax benefits and all unpaid amounts due hereunder, (5) sell or relet the Equipment, and (6) exercise all other remedies at law or equity. If we do not receive payment when due, you will pay a one-time late charge on any overdue payment equal to the greater of $.10/dollar for each late payment, or $15, plus a charge of 1-1/2% of the late payment for every month after the first month in which the payment is late . . .
Steffey Cert. Exh. 1 at 1.

against Defendant Mr. Muscarella as Guarantor (the second claim), and against both Defendants for costs of collection and attorneys' fees (the third claim). See Complaint ¶¶ 21-27. Defendants made no answer to Plaintiff's Complaint, and Plaintiff subsequently filed this motion for summary judgment on its first and second claims, seeking an Order severing its third claim, and seeking default judgment against Defendants.[3]

## II. Analysis

### A. Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a motion for summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In its response to a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for

---

[3]The Court notes that Plaintiff has not filed a separate motion for default judgment, but rather simply requests such judgment at the end of its memorandum of law in support of its motion for summary judgment. Pl. Mem. at 20. As Plaintiff has not properly requested that the Clerk of the Court enter Defendants' default, and as default has therefore not been entered, the Court will address only the motion for summary judgment at this time. See Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.").

trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

In considering whether summary judgment is appropriate, the Court must resolve all reasonable doubts and inferences in favor of the non-moving party. Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983) (citing Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 874 (3d Cir. 1972)). Where, as here, the moving party bears the burden of proof on relevant issues, the Court must conclude that the facts specified in the motion are sufficient to entitle that party to judgment as a matter of law. Anchorage Assoc. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990). Where the non-moving party bears the burden of proof, the Court must find that "the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

### B. The Motion as to Oakbrook

In order for HPFS to prevail on its claim against Oakbrook, the facts specified in the motion must show that the lease agreement was a valid contract, that Oakbrook breached the lease, and that HPFS suffered damages. AT&T Credit Corp. v. Transglobal Telecom Alliance, Inc., 966 F.Supp. 299, 302 (D.N.J. 1997).

### 1. The Lease is a Valid and Enforceable Finance Lease

Under Article 2A of the New Jersey Uniform Commercial Code ("NJUCC"), a finance lease is defined as a lease with respect to which:

> (i) the lessor does not select, manufacture, or supply the goods;
> (ii) the lessor acquires the goods or the right to possession and use of the goods in connection with the lease; and
> (iii) one of the following occurs: . . .
> (D) if the lease is not a consumer lease, the lessor, before the lessee signs the lease contract, informs the lessee in writing (a) of the identity of the person supplying the goods to the lessor . . . (b) that the lessee is entitled under this chapter to the promises and warranties, including those of any third party, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession or use of the goods, and (c) that the lessee may communicate with the person supplying the goods to the lessor and receive an accurate and complete statement of those promises and warranties . . ."

N.J.S.A. 12A:2A-103(g) (West 2005) (immaterial subsections omitted).

Plaintiff contends that the lease agreement between HPFS and Oakbrook was a finance lease because HPFS did not select, manufacture or supply the equipment, Pl. Facts ¶ 6, and HPFS acquired the goods in connection with the lease. See Steffey Cert. Exh. 1 at 2 (providing that, in consideration of HPFS's purchase of the equipment, Oakbrook was to lease the equipment for business purposes); see also Steffey Cert. ¶ 11 ("Oakbrook selected the Equipment from HP Indigo. HPFS then purchased the Equipment from HP

Indigo for the purpose of leasing it to Oakbrook.  HPFS paid HP Indigo for the Equipment *after* Oakbrook had accepted delivery thereof pursuant to the lease.") (Emphasis added).

The lease agreement also satisfies N.J.S.A. 12A:2A-103(g)(iii), as, prior to signing, Oakbrook was notified (a) of the warranties and representations under the agreement; (b) that Indigo was the party supplying the goods to HPFS; and (c) that Oakbrook was entitled to pursue Indigo for any claims or warranties relating to the equipment.  Steffey Cert. Exh. 1 at 1; see also AT&T v. Transglobal, 966 F.Supp. at 303 (concluding that an agreement met the statutory definition of finance lease where the lessee "was made aware of the warranties and representations in the Lease documents" and was notified of its right to "pursue the seller . . . for 'any and all claims and warranties relating to the equipment.'").

Furthermore, the lease agreement itself indicates that if the lessee selects a fair market value ("FMV") or a ten percent End of Term Purchase Option, then both lessor and lessee intend the lease agreement to be a finance lease as defined by Article 2A of the Uniform Commercial Code.  Steffey Cert. Ex. 1 at 1.  Schedule A shows that Oakbrook agreed to a FMV End of Term Purchase Option. Id. at 2.  Mr. Muscarella's signature and initials appear on the Lease Agreement and in the appropriate area on Schedule A.  The Court is thus satisfied that the lease agreement entered into by

the parties meets the statutory definition of a finance lease, and that Mr. Muscarella and Oakbrook were aware that the document they signed would be so construed.

**2.   Oakbrook Defaulted on its Obligations on the Lease**

The NJUCC further states that, "[i]n the case of a finance lease that is not a consumer lease the lessee's promises under the lease contract become irrevocable and independent upon the lessee's acceptance of the goods." N.J.S.A. 12A:2A-407. Such a promise "is effective and enforceable between the parties, . . . [and] is not subject to cancellation, termination, modification, repudiation, excuse, or substitution" without consent. Id. Once the lessee accepted the goods, then, it was obligated to perform its duties and covenants under the lease.  As HPFS claims that Oakbrook defaulted on the payments it promised to make, and as Oakbrook has presented nothing to counter this claim, the Court concludes that Oakbrook is in breach of its contract.

Furthermore, the lease clearly and unequivocally states that the lessee "waive[s] any claim or defense to lease payment." Steffey Cert. Exh. 1 at 1.  "Under New Jersey law, a promise to make all requisite payments and not to assert any defenses to payment are [sic] valid and enforceable." AT&T v. Transglobal, 966 F.Supp. at 302; see also AT&T Credit Corp. v. Zurich Data Corp., 37 F.Supp.2d 367 (D.N.J. 1999) ("Finance leases with such rigid

provisions are routinely enforced by courts.").

As the terms of the finance lease are unambiguous, Oakbrook's failure to make rental payments when due clearly places the company in default. The Court concludes that, as the parties agreed to the terms of a valid finance lease, and as Oakbrook breached the lease, HPFS has established the elements necessary to support its claim against Oakbrook. HPFS's motion for summary judgment is therefore granted as to this Defendant. AT&T v. Transglobal, 966 F.Supp. at 304.

**B.  The Motion as to Mr. Muscarella**

Mr. Muscarella's guaranty provided that he would "personally, irrevocably and unconditionally guarantee[] payment and performance of, and . . . agree[] to be jointly and severally liable for . . . all terms and conditions of this Lease until all obligations under this Lease are satisfied, including payment of collection costs and attorneys' fees." Steffey Cert. Exh. 1 at 1. Mr. Muscarella also agreed to a provision that entitled HPFS to proceed against him, and that waived any right he might have had to require otherwise. Id. Furthermore, he waived his "defenses and rights relating to impairment, validity, modification, extension of the Lease, or relating to substitution, dishonor, release or compromise of Lessee." Id. As Oakbrook has breached the lease agreement, and as Mr. Muscarella, the guarantor, has waived any affirmative defenses,

summary judgment is also appropriate as to this Defendant and will be granted.  AT&T v. Transglobal, 966 F.Supp. at 304.

### C. Damages

Plaintiff seeks to calculate damages in accordance with the stipulated damages provision of the lease agreement, arguing that such provisions are valid and enforceable under the NJUCC.  Pl. Mem. at 14.  The remedies HPFS seeks in this case, in accordance with the terms of the lease, are: the collection of past due rents; the acceleration of all payments provided for in the lease; and the collection of late fees as delineated in the lease.  Pl. Mem. at 14.  HPFS seeks judgment for damages totaling $437,497.71.  Id.; see also Steffey Cert. Exh. 3.

In the event of late payment, the lease provides that Oakbrook will pay "a one-time late charge on any overdue payment equal to the greater of $.10/dollar for each late payment, or $15, plus a charge of 1-1/2% of the late payment for every month after the first month in which the payment is late. . ."  Steffey Cert. Exh. 1 at 1.

Under the NJUCC, stipulated damages clauses are enforceable "in an amount or by a formula that is reasonable in light of the then anticipated harm caused by the default or omission." N.J.S.A. 12A:2A-504(1).  Historically, courts have scrutinized contractual clauses providing for specific damages in the event of breach, as

12

such damages have been found to constitute penalties. <u>Wasserman's Inc. v. Middletown</u>, 645 A.2d 100, 105 (N.J. 1994). While a liquidated damages clause entitles the non-breaching party to a payment that has been "arrived at by a good faith effort to estimate in advance the actual damages that will probably ensue from the breach," and, as such, is enforceable, a penalty is determined and fixed "as a punishment, the threat of which is designed to prevent the breach." <u>Id.</u> at 105-06. A penalty will not be enforced. <u>Id.</u>

To ascertain whether or not a stipulated damages clause constitutes a penalty, the Appellate Division of the New Jersey Superior Court established a two-part test: the clause will not be enforced unless "(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimate." <u>Westmount Country Club v. Kameny</u>, 197 A.2d 379, 382 (N.J. Super 1964). When in doubt, a clause will be construed as a penalty. <u>Id.</u>

The passage of years, subsequent court decisions, and the enactment of the Uniform Commercial Code, however, led to the evolution of the <u>Westmount</u> test. <u>MetLife Capital Financial Corp. v. Washington Avenue Assoc.</u>, 732 A.2d 493, 498-99 (N.J. 1999). Under Article 2A of the NJUCC, the enforceability of a given stipulated damages clause is "determined in the context of each

13

case by applying a standard of reasonableness in light of the harm anticipated when the formula was agreed to." Official Comment, N.J.S.A. 12A:2A-504. Furthermore, this section of the NJUCC does not require a finance lessor to show that the loss or harm resulting from the breach is difficult or unfeasible to calculate. See id. ("This section does not incorporate two other tests that under sales law determine enforceability of liquidated damages, i.e. , difficulties of proof of loss and inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. . . . given the parties' freedom to contract at common law, the policy behind retaining these two additional requirements was thought to be outweighed.").

The Court must therefore decide whether the one-time fee of ten percent of the first missed payment ($692.54), plus the addition of one-and-a-half percent interest on each subsequent payment (totaling $10,803.42), constitutes "an amount that is reasonable in light of the then anticipated harm caused by the default."[4] N.J.S.A. 12A:2A-504(1).

Plaintiff argues that the accelerated rent payments and late fees simply provide HPFS with "the benefit of its original bargain by guaranteeing that it will receive the full benefit of the rental stream and recompense for the use of its money to finance the acquisition of the Equipment." Pl. Mem. at 16.

---

[4]The Court addresses the accelerated rent payments in Part D, infra.

HPFS points to MetLife, supra, to support its contention that a ten percent late fee is reasonable. In that case, the New Jersey Supreme Court determined that a five percent late charge assessed against each delinquent payment, and a default interest rate, set at three percent above the contract rate, were reasonable measurements of liquidated damages. MetLife, 732 A.2d 493. Perhaps more importantly for HPFS's purposes, the MetLife court observed that "liquidated damages provisions in a commercial contract between sophisticated parties are presumptively reasonable and the party challenging the clause bears the burden of proving its unreasonableness." Id. at 499. Although Oakbrook has not challenged the damages clause in the HPFS lease agreement, this Court follows the MetLife lead and assesses the reasonableness of the ten percent late fee by examining "what is permitted by statute and what constitutes common practice in a competitive industry." Id. at 500.

Each of the cases upon which Plaintiff relies discuss default provisions requiring late charges of five percent *of each monthly payment*. See id. at 500-01 (pointing to statutes authorizing late fees of five percent in the contexts of secondary mortgage lenders, savings and loan associations, and certain home repair contracts); AT & T Credit Corp. v. Zurich Data Corp., 37 F.Supp.2d 367 (D.N.J. 1999) (enforcing a late fee of five percent of each monthly payment, plus additional interest payments of one-and-a-half

15

percent per month); AT&T v. Transglobal, 966 F.Supp. 299 (granting summary judgment in favor of plaintiff where lease terms included late charge of five percent of each monthly payment and one-and-a-half percent monthly interest payments).  If New Jersey courts have found that a five percent fee levied on *each* delinquent payment is reasonable, it follows that a ten percent fee assessed only on the amount of *one* delinquent/defaulted payment is also reasonable.

Furthermore, "[c]ases upholding the late charges generally involve small percentages negotiated between sophisticated commercial parties, charges that represent an industry standard, or fall within a range authorized by statute." MetLife, 732 A.2d at 501.  Here, Defendant Oakbrook is a small business, but it is a sophisticated commercial party nonetheless, and there is no evidence that it agreed to the terms of the lease only under duress.  If Oakbrook "truly believed that this provision was not reasonable, they could have negotiated different terms."  Id. (quoting Mattvidi Assoc. L.P. v. NationsBank, 639 A.2d 228 (Md. 1994).  As there is no evidence indicating that Oakbrook tried to negotiate different terms, and as Oakbrook and Mr. Muscarella have not appeared to challenge the reasonableness of the terms in this forum, the Court concludes that the one-time late charge, as set forth in the lease agreement and agreed to by Oakbrook, is a valid measure of liquidated damages and will be enforced.

Similarly, the one-and-a-half percent increase in the

16

contractual interest rate does not appear to be unreasonable in these circumstances. The three percent increase at issue in MetLife was found to be reasonable, 732 A.2d at 503, as was the one-and-a-half percent increase provided for in AT&T v. Zurich, 37 F.Supp.2d at 372-73.

Thus, as the damages provisions carry a presumption of reasonableness, and as New Jersey precedents support a finding that the late charge and default interest rate are reasonable, the Court concludes that the damages provided for in the lease agreement do not constitute a penalty and will be enforced.

### D. Severance of the Third Claim

Pursuant to Fed. R. Civ. P. 54(b), Plaintiff further moves the Court to enter judgment on the first two claims and to sever its third claim for relief, which is for attorneys' fees and reasonable costs of collection. Complaint ¶ 27. Plaintiff wishes to begin collecting on Oakbrook's debt as soon as possible, and it worries that the determination of attorneys' fees and costs may require a hearing and substantial time. Pl. Mem. at 18-19. Plaintiff additionally points out that Oakbrook is likely to file for bankruptcy protection and Mr. Muscarella may in fact already be "judgment proof." Pl. Mem. at 19; see also Russell Cert. Sept. 14, 2005 ¶ 3; Russell Cert. Sept. 30, 2005 ¶ 5.

The Court is not unsympathetic to these concerns, but

Plaintiff's Complaint has failed to set forth a fair estimate of the amount sought, as required by Fed. R. Civ. P. 54(d)(2)(B).

Furthermore, although the acceleration of rental payments is a common remedy in the event of lessee's default, future payments must generally be discounted to present value. See e.g. AT & T v. Transglobal, 966 F.Supp. at 301 (liquidated damages clause entitled lessor to recover the aggregate amount of all delinquent rental payments, plus the present value of all payments due for the remainder of the lease). Plaintiff's calculation of damages shows no such discount to present value. See Steffey Cert. Exh. 3. Counsel should therefore, by May 19, 2006, submit to the Court and serve on Defendants by certified mail an affidavit showing a revised calculation of the accelerated rental payments, as well as a Motion for attorneys' fees and costs.

As "judicial economy is certainly best served by delaying appellate proceedings until all claims and issues are disposed of and can be reviewed in a single 'parcel,'" the Court denies Plaintiff's motion to sever its third claim for relief. See AT&T v. Transglobal, 966 F.Supp. at 304.

### III. Conclusion

For the reasons set forth above, Plaintiff's motion for summary judgment is **granted** with respect to its first two claims

18

for relief. Plaintiff's motion to sever its third claim pursuant to Fed. R. Civ. P. 54(b) is **denied**.

An appropriate Order accompanies this Opinion.

                                             /S/ WILLIAM G. BASSLER
                                           William G. Bassler, U.S.S.D.J.

May 5, 2006